**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **CLAY CIBULA and**<br>**JOHN HEILMAN,**<br><br>　　　　　　　**Plaintiffs,**<br><br>　　**v.**<br><br>**PSS WORLD MEDICAL, INC. and**<br>**McKESSON CORPORATION,**<br><br>　　　　　　**Defendants.** | **1:13-cv-1122-WSD** |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on Plaintiffs' Motion to Remand and for

Attorneys' Fees [6] ("Motion to Remand").

## I.　BACKGROUND

On March 5, 2013, Plaintiffs Clay Cibula ("Cibula") and John Heilman

("Heilman") (collectively, "Plaintiffs") filed this action in the Superior Court of

Fulton County, Georgia.  In their Complaint [1-1], Plaintiffs allege that, when they

were employed by Defendants PSS World Medical, Inc. and McKesson

Corporation (collectively, "Defendants"), they each entered into an employment

contract containing numerous restrictive covenants (the "Restrictive Covenants")

prohibiting Plaintiffs from engaging in various forms of competition with

Defendants for one year after the termination of Plaintiffs' employment.  On March 5, 2013, Plaintiffs' employment with Defendants terminated.

In this action, Plaintiffs seek a declaratory judgment that the Restrictive Covenants are not valid, and they seek an injunction prohibiting Defendants from enforcing the Restrictive Covenants against them.  Plaintiffs do not seek monetary damages, and they do not allege any financial losses.

On April 5, 2013, Defendants removed the action to this Court on the basis of diversity jurisdiction.  On April 30, 2013, Plaintiffs filed their Motion to Remand, in which Plaintiffs argue that Defendants have failed to establish diversity jurisdiction because Defendants did not show that the amount in controversy exceeds $75,000.

## II.    DISCUSSION

### A.    Legal Standard

Under the removal statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court.  28 U.S.C. § 1441(a) (2006).  Where removal is challenged, the removing party has the burden to show removal is proper, or the case must be remanded to the state court.  Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).  "[U]ncertainties [about the basis for removal] are

resolved in favor of remand." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Once a case is removed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2006).

B. Analysis

Diversity jurisdiction exists where the amount in controversy exceeds $75,000, and the suit is between citizens of different states. 28 U.S.C § 1332(a). Plaintiffs argue that removal of this action was not proper because Defendants have not shown that the amount in controversy exceeds $75,000. They further assert that they are entitled to recover litigation expenses because the removal was improper.

1. *Amount in Controversy*

In determining whether the amount in controversy requirement is met for the purposes of diversity jurisdiction, courts measure the value of the litigation from the plaintiff's perspective. Ericsson GE Mobile Commc'ns v. Motorola Commc'ns & Elecs., Inc., 120 F.3d 216, 219 (11th Cir. 1997). The amount in controversy is determined from the face of the complaint, "unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961). Where a plaintiff

seeks only declaratory or injunctive relief, the value of the relief "is the monetary value of the object of the litigation that would flow to the plaintiff[] if the injunction were granted." D & R Party, LLC v. Party Land, Inc., 406 F. Supp. 2d 1382, 1384 (N.D. Ga. 2005) (quoting Williams, 269 F.3d at 1319).

In cases removed to federal court, the removing defendant must prove, by a preponderance of the evidence, that the value "that would flow to the plaintiff" exceeds $75,000.[1]  See id.  When a plaintiff makes a timely motion to remand, "the district court has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents."  Lowery v. Ala. Power Co., 483 F.3d 1184, 1213 (11th Cir. 2007).  "[I]n assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal

---

[1] Plaintiffs argue that Defendants must prove the amount in controversy "by a legal certainty."  The "legal certainty" standard applies only in cases where a defendant seeks to prove that the amount in controversy is greater than the amount expressly alleged in the plaintiff's complaint.  See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095–96 (11th Cir. 1994).  In cases like this one, where the complaint is silent as to the amount in controversy, the defendant's burden is to prove the amount in controversy "by a preponderance of the evidence."  See Williams, 269 F.3d at 1319.

unambiguously establish federal jurisdiction." Id.[2]  "If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." Id. at 1214–15.  "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." Id. at 1215.

"[A] removing defendant's counsel is bound by Rule 11 to file a notice of removal only when counsel can do so in good faith." Id. at 1213 n.63.  This requires the defendant's counsel to represent, under Rule 11, that the case belongs in federal court. Id. at 1217.  "Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists." Id.  For this reason, in a case with "only bare pleadings

---

[2] Under 28 U.S.C. § 1446(b), an action is removable in two types of cases: "(1) those removable on the basis of an initial pleading; and (2) those that later become removable on the basis of 'a copy of an amended pleading, motion, order or other paper.'" Lowery, 483 F.3d at 1212 (quoting 28 U.S.C. § 1446(b)). "Regardless of the type of case, a defendant must remove within thirty days of receiving the document that provides the basis for removal." Id. at 1212–13. When a defendant removes a case within thirty days of receiving the complaint, "the removing defendant may present [with the notice of removal] additional evidence—business records and affidavits, for instance—to satisfy its jurisdictional burden." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 n.4 (11th Cir. 2010).

containing unspecified damages," it is "highly questionable whether a defendant could ever file a notice of removal on diversity grounds . . . without seriously testing the limits of compliance with Rule 11." Id. at 1215 n.63.

In this action, Plaintiffs seek a declaration that the Restrictive Covenants in their employment contracts with Defendants are not enforceable, and they seek to prevent Defendants from attempting to enforce the Restrictive Covenants. There are no factual allegations contained in Plaintiffs' Complaint supporting that the value of this relief to each Plaintiff exceeds $75,000.

In their Notice of Removal, Defendants attempt to show that the amount in controversy exceeds $75,000 by attaching the declarations of their employees Rich Riehl and Ann Baker. These declarations show that Cibula earned $853,503.65 in his last full year of employment with Defendants and that Heilman earned $946,030.01 in his last full year of employment with Defendants. Defendants assert it is thus "reasonable to infer" that Plaintiffs each will earn more than $75,000 per year in a competing business. What a former employee might earn in future employment is not the jurisdictional amount test in a case like the one here. Several courts have determined that an employee's total potential new salary at a competing business is not sufficient to establish the amount in controversy because the value of the litigation to the plaintiff is not his entire salary but the difference

between what the plaintiff can earn with and without complying with restrictive covenants.  See, e.g., Wilson v. Benyon Sports Surfaces, Inc., No. 1:11-cv-2002-RWS, 2011 WL 6014666, at *3 (N.D. Ga. Dec. 1, 2011) ("[T]he relevant inquiry is the difference between [the plaintiff's] salary at [the defendant's business] and what he could make should the covenants be invalidated.").  Plaintiffs' previous salaries with Defendants simply are not evidence of their current or future salaries with a different employer, and they do not show the difference between what Plaintiffs can earn with and without complying with the Restrictive Covenants.

The Court also cannot assume, absent a record to support it, that Plaintiffs left their jobs with Defendants only to make the same or greater salary at a competitor.  Employees terminate their relationships with employers for a host of reasons, including because they choose to work fewer hours, to seek greater job hour flexibility, to seek a more collegial environment, to avoid stress, to deal with personal adversity—and the list goes on.  Each of these reasons might well impact the compensation a former employee is paid by a new employer.  Defendants seek to pigeon-hole the Court into finding a single reason for the job change here—that Plaintiffs left Defendants' employ to seek the same or greater income.  To decide, on the information available here, why Plaintiffs departed Defendants' employment necessarily would require the Court to speculate on the reasons for the

departures and on the economic consequences of the decisions.  See Lowery, 483 F.3d at 1213–15.

The declarations submitted by Defendants do not otherwise support that the required amount in controversy is met.  For example, Plaintiffs, while employed by Defendants, controlled accounts for four customers (the "Four Customers") who generated sales in 2012 of nearly $2.25 million.  After Plaintiffs resigned, the Four Customers terminated their relationships with Defendants, and one of the four, whose account generated just over $96,000 in sales in 2012, allegedly told Defendants that he was taking his future business to Cibula at a new company. There is no evidence that he did, and there is no evidence that the other three customers continued their relationships with Cibula.  Yet on these facts, Defendants assert that the Court may infer that (i) Plaintiffs resigned to join or start a competing business; (ii) the Four Customers all will take their business to Plaintiffs; and (iii) the volume of sales generated by the Four Customers, during the one-year effective period of the Restrictive Covenants, will be the same as the sales generated by these customers in 2012 for Defendants.  The evidence before the Court is not sufficient to support any of these inferences, all of which are necessary to reach the conclusion that the amount in controversy in this case exceeds $75,000.  See Cohen v. Office Depot, Inc., 204 F.3d 1069, 1079 (11th Cir.

2000) (holding that the amount in controversy cannot be established by assuming the existence of "too many contingencies").  It would be rank conjecture to follow the inferential reasoning offered by Defendants.

Even if Defendants did prove that the Four Customers are planning to give their future business to Plaintiffs—which they have not—there is no evidence that the value, to Plaintiffs, of this business will exceed $75,000 during the one year the Restrictive Covenants apply.  There is thus no basis for the Court to assume any income level sufficient to establish the amount in controversy.  See Lowery, 483 F.3d at 1213–15.[3]  Defendants certainly have not shown one by a preponderance of the evidence.  See Williams, 269 F.3d at 1319.

The Court finds that Defendants, in removing this case, have not shown, by a preponderance of the evidence, that the amount in the controversy in this matter exceeds $75,000, and Plaintiffs' Motion to Remand is required to be granted.

2. *Litigation Expenses*

In remanding a case, the Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28

---

[3] The Court notes that Defendants' loss of the Four Customers' business is not, itself, sufficient to establish the amount in controversy.  See D & R Party, 406 F. Supp. 2d at 1385 ("The financial loss the defendant may suffer if the noncompetition clauses in the Agreement are declared invalid and the plaintiff is permitted to compete against the defendant is irrelevant.")

U.S.C. § 1447(c).  District courts may, in their discretion, award expenses under

§ 1447(c) "where the removing party lacked an objectively reasonable basis for

seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

"[I]n deciding whether to award fees under § 1447(c), the merit of the removal is

much more important than the motivation for the removal.  In fact, it is the

overriding consideration."  Gray v. N.Y. Life Ins. Co., 906 F. Supp. 628, 634 (N.D.

Ala. 1995).

    In this case, the only bases for removal were Defendants' assumptions that

Plaintiffs each would earn more than $75,000 per year in a competing business and

that the Four Customers would take their accounts to Plaintiffs and continue to

generate the same volume of sales in the following year.  These assumptions are

speculative and are not based on sufficient evidence.  The Court finds that

Defendants did not have "an objectively reasonable basis for seeking removal" and

concludes that Plaintiffs should be awarded their expenses and attorney's fees

incurred as a result of the removal.  See Devine v. Prison Health Servs., Inc., 212

F. App'x 890, 893 (11th Cir. 2006).

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand and for

Attorneys' Fees [6] is **GRANTED**.  The Clerk is **DIRECTED** to **REMAND** this

action to the Superior Court of Fulton County, Georgia.

**IT IS FURTHER ORDERED** that Plaintiffs submit, within fourteen (14)

days of this Order, an itemized list of costs and expenses, including attorney's fees,

that they have incurred as a result of the removal of this action.  Within fourteen

(14) days of Plaintiffs' submission, Defendants may file a response.

**SO ORDERED** this 8th day of October, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE